**Opinion filed September 2, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00020-CV

_____

## IN THE INTEREST OF T.M., M.M., AND N.M., CHILDREN

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV 18-12-534**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of T.M., M.M., and N.M.  The mother filed this appeal.[1]  On appeal, she presents two issues in which she challenges the sufficiency of the evidence to support the trial court's findings and one issue in which she complains of the admission of certain exhibits.  We affirm the trial court's order of termination

---

[1]We note that the father also filed a notice of appeal but that he subsequently filed a motion to withdraw his appeal.  This court granted the father's motion and dismissed his portion of the appeal. Therefore, the mother is the only remaining appellant, and this opinion addresses the termination of her parental rights only.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being and that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Evidence Presented at Trial*

As is often the case in a parental termination proceeding, the children were removed from their parents because of the parents' use of illegal drugs. The record shows that this case began while Appellant was out of town for the weekend with her boyfriend. While Appellant was gone, the police went to her apartment in response to a report that it was filled with smoke and smelled like marihuana. She had left the children—who were then ages four years, three years, and eleven months old—at her apartment in the care of their father. By the time that Appellant returned to her apartment, the police and personnel from the Department of Family and Protective Services were there. During the investigation, Appellant and the children's father both admitted to drug use. Appellant indicated that she had used

cocaine, and she tested positive for cocaine. The father tested positive for methamphetamine. The children were removed and were initially placed with a relative.

Hair follicle testing was conducted on each child at the time of removal. All three children tested positive for methamphetamine, and two of the children tested positive for cocaine. Appellant was subsequently charged with three counts of endangering a child. The indictment alleged that she had endangered each of her children by using a controlled substance in the presence of the children, by leaving a controlled substance unsecured in her residence, or by allowing the children to access a controlled substance. Appellant pled guilty to these charges and was placed on deferred adjudication community supervision for five years.

Both parents participated in the preparation of a family service plan. Appellant eventually completed most of the *tasks* assigned to her, but she did not comply with the service plan in other ways. For example, she continued to maintain a relationship and live with her boyfriend even though he did not participate in the services as required and despite his criminal history and continued involvement with drugs. She was not forthcoming with the Department about her continued relationship with that boyfriend, and he was not an appropriate person for her to live with if she wanted the children returned to her. Additionally, for a majority of the time that the case was pending (almost two years), Appellant did not maintain a stable home or an environment that would have been safe for the children. At some point, she reported being homeless. During the four months preceding the commencement of the final hearing, police were summoned to Appellant's residence six times.

A significant issue at trial seemed to be Appellant's lack of judgment in various aspects of life. Before removal, Appellant spent a lot of time out of town

hanging out with friends, and she left the children with an acknowledged methamphetamine addict while she was out of town. After removal, she continued to be in a relationship with a man who she knew was not appropriate for the children to be around. She also tended to live above her means. She posted inappropriate nude photos and videos of herself on social media—on the same account and next to photos of her children. In these lewd posts, which contained nude photos of Appellant, Appellant offered to sell herself and be a sex slave for the weekend in exchange for $100 and to sell photos and videos for various amounts of money. In one of her Snapchat posts, in text above a photo of Appellant's face and bare breasts, Appellant stated: "$50 to watch me f--k my a-- and my p---y with my brand new dildo" (hyphens added by this court); the post continued in a graphic manner, but we will not quote the remainder of the post in this opinion. Although Appellant testified that she had not posted any such photos or solicitations recently, some of the exhibits admitted during trial indicated that Appellant was still posting these photos and soliciting money for them even after she claimed to have stopped.

Appellant, however, did many things right. She abstained from the use of illegal drugs after her children were removed. The record shows that Appellant took numerous drug tests as required and that the result of each test (with the exception of the initial drug screen that occurred at the time of removal) was negative. Appellant attended a majority of her counseling sessions and participated in them in an "engaged" manner. She also regularly attended visitation with the children. According to the most recent caseworker, Appellant's visits with the children went very well. Appellant also obtained employment, and her current supervisor indicated that she was a dependable employee. Approximately three months before the final hearing, Appellant seemed to finally get her act together, according to her

5

caseworker at the time. The concern for the Department was that Appellant had been unable in the past to "keep it together for very long."

We note that, throughout the case below, the children's father continued to struggle with his drug addiction, a problem about which he was very honest in his discussions with the Department's caseworkers. He went to rehab multiple times but relapsed each time. Appellant acknowledged that she was aware of the father's drug problem.

When the children were removed from their parents' care, they were initially placed with Appellant's aunt. The aunt, who was also caring for three other children, was overwhelmed, and the decision was soon made to place M.M. and N.M. in foster care; they were young and needed more one-on-one attention than they were receiving at the aunt's home. When she came into care, M.M. had behavioral issues as well as dental issues. Her four front teeth had rotted out. T.M. was placed in that same foster home several months later. All three children remained in that home at the time of trial.

The testimony showed that Appellant and her children were bonded, that she loved them, and that they loved her. The testimony also showed that the foster parents loved the children, met all of the children's needs, and wanted to adopt all three children if the children became available for adoption. The children were doing very well in their foster home. The foster parents were described by the children's guardian ad litem as being "phenomenal." One of the caseworkers described the foster parents as "good" and as doing a "decent" job taking care of the children; others involved in the case described the foster parents as "textbook foster parents," remarkable, nurturing, caring, and capable.

Appellant did not want her parental rights to be terminated, and the caseworker that took over the case in June 2020, just a few months prior to the final

hearing, did not believe that termination of Appellant's rights would be in the best interest of the children. Likewise, Appellant's mother did not believe that termination was in the children's best interest; she testified that Appellant "is a good mom." However, the conservatorship caseworker that was involved with this case from December 2018 to June 2020 believed that the children would be in danger, emotionally or physically, if they were returned to Appellant. The children's guardian ad litem believed that termination of Appellant's parental rights would be in the children's best interest. The guardian ad litem acknowledged that T.M. had expressed a desire to be with his parents, but the guardian ad litem pointed out that T.M. had also expressed a desire to "live in outer space with Spiderman." The Department's official stance was a recommendation that the trial court terminate Appellant's parental rights.

*Analysis*

**1. The evidence was sufficient to show that Appellant endangered the children.**

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D) and (E). We need only address her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds); *see also In re J.F.-G.*, No. 20-0378, 2021 WL 2021138, at *5 (Tex. May 21, 2021) (acknowledging that one predicate finding—coupled with a best-interest finding— is enough to uphold the judgment on review).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct,

including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Based upon evidence of Appellant's use of cocaine, her leaving the children with their methamphetamine-addicted father, all of the children testing positive for methamphetamine, two of the children testing positive for cocaine, and the mother's admission in criminal proceedings against her that she had endangered each of her children, we conclude that the trial court could have found by clear and convincing evidence that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. We hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's first issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not reach Appellant's complaint under subsection (D). *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

**2. The evidence was sufficient to show that termination was in the children's best interest.**

In her second issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination of her parental

rights would be in the best interest of the children. Presumably because Appellant had admitted to and pled guilty to endangering her children, the main issue at trial was whether it would be in the children's best interest to terminate Appellant's parental rights. And, as shown by the evidence set forth above, that issue was vigorously contested.

However, the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. Giving due deference to the trial court in this regard, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in T.M.'s, M.M.'s, and N.M.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, the acts previously committed by Appellant that endangered her children, Appellant's continued poor judgment (which could endanger or have other adverse effects on the children), and the instability of Appellant's situation during a large portion of the time that the case was pending, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of the children. *See id.* We defer to the trial court's finding as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the finding as to best interest is not supported by clear and convincing evidence. We overrule Appellant's second issue.

**3. The trial court did not abuse its discretion when it admitted exhibits into evidence.**

In her third issue, Appellant complains that the trial court abused its discretion when it admitted into evidence various nude photos of Appellant. She asserts that the *posts* containing these photos were not properly authenticated and that the photos should have been excluded because they were unfairly prejudicial to Appellant. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020); *J.P.B.*, 180 S.W.3d at 575. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

The record reflects that the Department offered two exhibits containing nude photos of Appellant: Plaintiff's Exhibit Nos. 2 and 4. Exhibit No. 2 contained eleven photos, and Exhibit No. 4 contained ten photos as offered into evidence. Appellant objected to Exhibit No. 2 on the basis that the photos were prejudicial and invasive and lacked probative value. Appellant had already admitted that she took the photos contained in Exhibit No. 2 and that she had posted those photos on the Internet. The trial court overruled Appellant's objection.

Appellant objected to Exhibit No. 4 as being duplicative, prejudicial, and not properly authenticated. The trial court initially sustained Appellant's objection but permitted the Department to ask additional questions in an attempt to authenticate the photos. The Snapchat account that Appellant referred to as her "old account" is the account shown on some of the photos that were contained in Exhibit No. 2. After Appellant acknowledged that eight of the ten photos showed to have been posted from her "old account," an account which Appellant testified she had deleted "a

couple of months ago," the trial court overruled Appellant's objections as to those eight photos. However, the trial court sustained Appellant's objection to the first two photos[2] of Exhibit No. 4 because those were posted from a different account—an account about which Appellant claimed to know nothing even though her nude photos had recently been posted using that account.

We will first address Appellant's contention that the *posts* containing the photos were not properly authenticated. To authenticate an item of evidence for admissibility purposes, the proponent must show "that the matter in question is what its proponent claims." TEX. R. EVID. 901(a); *J.P.B.*, 180 S.W.3d at 575.

Appellant admitted that she took and *posted* the photos contained in Exhibit No. 2. Appellant did not object to Exhibit No. 2 based upon any lack of authentication. The eight photos from Exhibit No. 4 that were admitted over Appellant's objections were posted from the same account as several of the photos that had previously been admitted in Exhibit No. 2, and most of the photos in Exhibit No. 4 were photos depicting Appellant (nude) or her children. Appellant acknowledged that those eight photos had been posted to her old account, but she denied having posted them and testified that she had deleted that account. Based upon the evidence before it, the trial court could have determined that the Department had shown that the eight photos that had been posted to Appellant's "old account" were exactly what the Department claimed them to be. The internal content of the posts, along with Appellant's acknowledgment of her prior posts using that same account, was sufficient to support the trial court's ruling regarding authentication. *See Tienda v. State*, 358 S.W.3d 633, 638–47 (Tex. Crim. App. 2012).

---

[2]We note that the court reporter inadvertently included in the appellate record the two photos that were not admitted into evidence. We also note that the trial court had excluded those two photos from its consideration and that we have not considered those two photos in our review of the sufficiency of the evidence.

Appellant next contends that the photos were unfairly prejudicial and should have been excluded under Rule 403 of the Texas Rules of Evidence and that the sharing of the photos via Zoom screen share prior to their admission was unduly prejudicial. We disagree.

We note first that screen sharing via Zoom was the only means available to the Department to show the photos to Appellant for purposes of authentication. There was nothing unduly prejudicial about this procedure.

Second, Rule 403 of the Texas Rules of Evidence permits a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Rule 403 does not affect the admissibility of evidence that is merely prejudicial, but it may affect the admissibility of evidence that is *unfairly* prejudicial or needlessly cumulative. *See id.* The trial court is required to balance the probative value of the evidence against concerns such as unfair prejudice, and the trial court may exclude evidence under Rule 403 only if a countervailing concern substantially outweighs the evidence's probative value. *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 542 (Tex. 2018).

Here, the posts containing solicitations and nude photos of Appellant next to photos of her children were no doubt prejudicial. However, we cannot hold that they were unfairly prejudicial or needlessly cumulative or that the trial court abused its discretion in admitting the photos over Appellant's Rule 403 objections. Appellant posed for or took the nude photos of herself, and she posted a majority, if not all, of the photos on social media for others to see. The photos in Exhibit No. 4 were not needlessly cumulative because they appear to have been posted more recently than the photos in Exhibit No. 2 and during the time in which Appellant supposedly had

12

her act together. The trial court could have determined that any danger of unfair prejudice to Appellant did not substantially outweigh the probative value of the photos. The photos were probative in that they tended to support the Department's concerns about Appellant's lack of judgment and about the safety and well-being of the children if returned to Appellant. We hold that the trial court did not abuse its discretion when it admitted the photos over Appellant's Rule 403 objections.

Because we have concluded that the trial court did not abuse its discretion by admitting into evidence the photos in Exhibit No. 2 or the eight photos from Exhibit No. 4, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS
JUSTICE


September 2, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.